United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BRENDAN SCHULTZ,

Plaintiff,

v.

THE HARRY S. TRUMAN SCHOLARSHIP FOUNDATION, et al.,

Defendants.

Case No. 20-cv-04058-MMC

**ORDER DISMISSING IN PART SECOND AMENDED COMPLAINT PURSUANT TO 28 U.S.C. § 1915; DIRECTING SERVICE OF REMAINING CLAIMS**

Before the Court is plaintiff Brendan Schultz's ("Schultz") Second Amended Complaint ("SAC"), filed July 30, 2021. The Court, having reviewed the SAC pursuant to 28 U.S.C. § 1915(e)(2), rules as follows.

## I. BACKGROUND

The above-titled action arises from Schultz's application for a Harry S. Truman Scholarship ("Scholarship") and, in particular, his 2009 finalist interview. In the SAC, he asserts three Claims for Relief, each alleging ethnicity discrimination, and each brought against the following defendants: the Harry S. Truman Foundation ("Foundation"); Terry Babcock-Lumish, the Foundation's current Executive Secretary ("Babcock-Lumish"); Andrew Rich, the Foundation's former Executive Secretary ("Rich"); Tara Yglesias, the Foundation's Deputy Executive Secretary ("Yglesias"); Westbrook Murphy, the Foundation's General Counsel ("Murphy"); Brooks Allen, the Secretary of the 2019 Truman Scholarship San Francisco Regional Review Panel ("Allen"); and Kevin Higgins, the Chair of the 2019 Truman Scholarship San Francisco Review Panel ("Higgins").

In support thereof, Schultz alleges that he has led youth development programs in Southeastern Europe, that he has received numerous internships, grants, and fellowships

United States District Court
Northern District of California

related to his work in international development, and that, as a third-year undergraduate student, he applied for the Scholarship, a program administered by the Foundation, which, Schultz alleges, is a federal agency. (See SAC ¶ 12.) Schultz alleges he advanced as a finalist and, on March 18, 2019, was interviewed by the San Francisco Regional Review Panel. (See id.)

Schultz further alleges that, during his interview, Higgins asked him inappropriate and hostile questions, including, "Do you think that Jews are oppressed?" and "Are Jews as oppressed as racial minorities in the United States?" (see SAC ¶ 13f) and that, upon his expressing a desire to run for elected office, Allen broke into a discernable laugh (see SAC ¶ 13g). Additionally, Schultz alleges, the only other Jewish finalist was asked "how the oppression of Jews in America compared to Black Americans," and that no other finalist was "asked to defend the traumatic communal experiences of their ethnic group." (See SAC ¶ 14.)

When Schultz did not receive a Scholarship from the Foundation, and believing he faced discrimination on the basis of his "ethnic identity," he reported his concerns to Yglesias who, Schultz alleges, investigated his interview. (See SAC ¶ 18.) According to Schultz, Yglesias, who reported directly to Rich (see SAC, Ex. 4), responded that, although the panelists' recollection of his interview and materials was "generally positive," she lacked sufficient information to conduct an in-depth investigation (see SAC ¶¶ 19-20) and, ultimately, "admitted that she had been 'negligent' in handling the investigation process," after which Babcock-Lumish began a second investigation into the interview (see SAC ¶¶ 21-22).

Schultz alleges that, on August 14, 2019, Babcock-Lumish sent him an email in which she described him as "well qualified" for the Scholarship and "admitted that some members of the panel posed questions with 'irreverence,'" but concluded "others presented themselves in both writing and in person as better fits for our organization and its mission." (See SAC ¶ 22.) Schultz further alleges he responded with "criticisms regarding the lack of due process and impartiality" of the investigation, after which

Babcock-Lumish replied that the investigation would be turned over to the Foundation's "outside legal counsel." (See SAC ¶ 24.)

Thereafter, Schultz, "[u]nconfident regarding the sincerity of the [Foundation's] investigative process," contacted a number of federal agencies as well as his Congressional representative, none of which, according to Schultz, provided satisfactory assistance (see SAC ¶¶ 25-26), and that subsequently, on May 1, 2020, Murphy sent Schultz an email in which he stated his conclusion that the Foundation's "belief in, and practice of, nondiscrimination ma[de] it highly unlikely that [Schultz's] unsatisfactory interview experience resulted from personal animus by the interviewers" (see SAC ¶ 28). The instant lawsuit followed.

## II. PROCEDURAL BACKGROUND

By order filed June 29, 2020, Magistrate Judge Jacqueline Scott Corley, to whom the matter previously was assigned, granted Schultz's application for leave to proceed in forma pauperis. Where, as here, a party proceeds in forma pauperis, the district court "shall dismiss the case at any time" if the plaintiff "fails to state a claim on which relief may be granted." See 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1126-28 (9th Cir. 2000) (holding § 1915(e)(2) requires district court to dismiss in forma pauperis complaint sua sponte where plaintiff fails to state cognizable claim). Pursuant to § 1915(e), this Court, by order filed June 30, 2021, dismissed Schultz's First Amended Complaint and afforded him leave to amend. In so ruling, the Court adopted a Report and Recommendation, filed September 16, 2020, in which Judge Corley found the First Amended Complaint, by "fail[ing] to provide [d]efendants with fair notice of a *specific*, delineated claim under which their acts have violated [Schultz's] rights," failed to comply with Rule 8 of the Federal Rules of Civil Procedure. (See Dkt. No. 12 at 5:5-7 (emphasis in original).)

In the SAC, Schultz, as noted, has now separated his causes of action into three Claims for Relief. The Court, having read and considered the SAC, finds the allegations therein suffice to cure the pleading deficiencies noted by Judge Corley and, accordingly,

turns to the substance of Schultz's claims.

## III. DISCUSSION

### A. First Claim for Relief – Fifth Amendment

The First Claim for Relief is brought under the Due Process Clause of the Fifth Amendment and is based on allegations that the Foundation, Allen, and Higgins discriminated against Schultz in the review of his application for the Scholarship and that the Foundation, Babcock-Lumish, Rich, Yglesias, and Murphy discriminated against him in the review of his subsequent grievance. Schultz seeks injunctive relief and, citing Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), also seeks compensatory and punitive damages.

"[A] cause of action may be implied directly under the equal protection component of the Due Process Clause of the Fifth Amendment," and equitable relief, e.g., injunctive relief, is available thereunder. See Davis v. Passman, 442 U.S. 228, 242-43 (1979). Here, as noted above, Schultz alleges that he and the one other Jewish finalist were the only finalists who were questioned about their ethnic or religious identity, that neither was selected for a Scholarship, and that the two finalists who were selected for a Scholarship were less qualified than Schultz. The Court finds these allegations suffice at this stage of the proceedings to state a claim for injunctive relief.

Schultz, however, sues Babcock-Lumish, Rich, Yglesias, Murphy, Allen, and Higgins, in their "individual capacit[ies]." (See SAC ¶¶ 6-11.) As the practices he challenges are carried out by these six defendants in their official capacities, and the "permanent injunction[s]" he seeks pertain to their conduct while acting in their official capacities (see SAC ¶¶ 83-86), the only equitable relief that can be obtained is from the Foundation. See Feit v. Ward, 886 F.2d 848, 858 (7th Cir. 1989) (dismissing claims for declaratory and injunctive relief where plaintiff sued federal employees in individual capacities but claims were based on decisions made in official capacities); see also BEG Invs., LLC v. Alberti, 34 F. Supp. 3d 68, 80 (D.D.C. 2014) (noting "[c]ourts have concluded that there is no basis for suing a government official for declaratory and

injunctive relief in his or her individual or personal capacity"; collecting cases). Accordingly, Schultz's Fifth Amendment claim for injunctive relief against Babcock-Lumish, Rich, Yglesias, Murphy, Allen, and Higgins will be dismissed. The Court next turns to the question of whether Schultz is entitled to seek damages.

In Bivens, the Supreme Court, for the first time, held that, irrespective of an absence of statutory authorization, a claim for damages could be brought directly under the Amendment's prohibition against unreasonable searches and seizures. See Bivens, 403 U.S. at 397. The Supreme Court thereafter expanded the holding announced in Bivens on only two other occasions, see Davis, 442 U.S. 228 (recognizing Fifth Amendment claim for damages against United States Congressman who concededly terminated assistant's employment solely on basis of gender) and Carlson v. Green, 446 U.S. 14 (1980) (recognizing Eighth Amendment claim for damages against federal prison officials for failure to provide adequate medical treatment), and subsequently has made clear that "expanding the Bivens remedy is now a 'disfavored' judicial activity." Ziglar v. Abbasi, 137 S. Ct. 1843, 1857 (2017); see also Hernandez v. Mesa, 140 S. Ct. 735, 743 (2020) (noting that "for almost 40 years [the Supreme Court] ha[s] consistently rebuffed requests to add to the claims allowed under Bivens"; collecting cases).

In assessing a claim brought under Bivens, courts engage in a "two-step inquiry." See Hernandez, 140 S. Ct. at 743. The court first asks whether the claim arises in a "new context" or involves a "new category of defendants," and, if so, whether there are any "special factors that counsel hesitation about granting the extension." See id.

The Supreme Court's "understanding of a 'new context' is broad." See id. (noting "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized"). Here, the above-described facts differ to such an extent from those addressed in cases wherein Bivens has been found applicable that the instant context can only meaningfully be described as "new."

Next, with respect to the question of special factors, the Supreme Court has

recognized that "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself" counsel hesitation, and, "when alternative methods of relief are available, a Bivens remedy usually is not." See Abbasi, 137 S. Ct. at 1857-58, 1863 (holding "separation-of-powers principles should be central to the analysis"). Here, as discussed above, Schultz has a Fifth Amendment claim for injunctive relief, and, as set forth below, he is able to pursue his discrimination claims under the Administrative Procedure Act as well. Moreover, the challenged conduct falls within a category similar to that to which the Supreme Court has declined to extend Bivens. See Bush v. Lucas, 462 U.S. 367, 388–89 (1983) (declining to extend Bivens to employee's claim of improper disciplinary action taken by managerial personnel; finding Congress is in a "far better position than a court to evaluate the impact of a new species of litigation" pertaining to federal employment issues).[1]

Accordingly, Schultz's Fifth Amendment claim for damages against all defendants will be dismissed, and, as noted above, Schultz may proceed on his Fifth Amendment claim for injunctive relief against the Foundation.

**B. Second Claim for Relief – APA**

The Second Claim for Relief is brought pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 et seq. ("APA"), and is based on allegations that the Foundation, Allen, and Higgins, by discriminating against Schultz in the review of his application for the Scholarship, violated Executive Order 13160, which prohibits, inter alia, "discrimination on the basis of race, sex, color, national origin, disability, [and] religion . . . in Federally conducted education and training programs and activities" (see Exec. Order No. 13160, 65 Fed. Reg. 39775 (June 23, 2000)), that the Foundation, by discriminating against Schultz and not awarding a Scholarship based on merit, violated its own procedures, and that the Foundation, Babcock-Lumish, Rich, Yglesias, and Murphy, by

[1] Further, as to Allen and Higgins, who are not Foundation employees (see SAC, Ex. 10), a question exists as to whether such individuals can be deemed to be acting under color of federal authority.

failing to develop a procedure to receive and address grievances, violated Executive Order 13160. Schultz seeks both injunctive relief and damages.

Pursuant to the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Courts "may review a claim under the APA asserting that an agency violated an executive order where the order has the force of law." See Silver Dollar Graving Ass'n v. U.S. Fish & Wildlife Serv., No. 07-35612, 2009 WL 166924, at *2 (9th Cir. Jan. 13, 2009). An executive order has the force of law where "it is explicitly promulgated pursuant to constitutional or statutory authority." Id. Here, the executive order on which Schultz relies expressly cites the Constitution and the specific statutory authority under which it is promulgated, and in addition, expressly states it is not intended "to preclude judicial review of final decisions in accordance with the [APA]." See Exec. Order No. 13160, 65 Fed. Reg. 39775, 39778 (June 23, 2000); see also Legal Aid Soc. of Alameda Cty. v. Brennan, 608 F.2d 1319, 1330 (9th Cir. 1979) (distinguishing executive orders "intended primarily as . . . housekeeping measure[s]" from those "issued . . . pursuant to constitutional or statutory authority").

The APA, however, does not provide for claims brought against individuals other than in their "official capacity" and only provides for relief "other than money damages." See 5 U.S.C. § 702; see also Duhring Res. Co. v. U.S. Forest Serv., No. CIV.A.07-0314E, 2009 WL 586429, at *6 (W.D. Pa. Mar. 6, 2009) (holding "[t]he APA does not provide for individual-capacity claims, or money damages").

Accordingly, as Schultz brings his claims against Babcock-Lumish, Rich, Yglesias, Murphy, Allen, and Higgins in their "individual capacit[ies]" (see SAC ¶¶ 6-11), those claims will be dismissed, and Schultz may proceed on his APA claim for injunctive relief against the Foundation.

**C. Third Claim for Relief – Title VI**

The Third Claim for Relief is brought pursuant to Title VI of the Civil Rights Act of

United States District Court
Northern District of California

1964, 42 U.S.C. § 2000d et seq., and is based on allegations that the Foundation, Allen, and Higgins discriminated against Schultz in the review of his application for the Scholarship and that the Foundation, Babcock-Lumish, Rich, Yglesias, and Murphy discriminated against him in the review of his subsequent grievance. As relief, Schultz seeks an award of damages.

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. As defined in Title VI, the term "program or activity" includes "the operations of" state or local government departments or instrumentalities, colleges or certain systems of higher education, corporations or other private organizations, or a combination of two or more of the foregoing entities. See 42 U.S.C. § 2000d-4a. The statutory definition does not, however, include the operations of federal agencies, and courts have consistently held that "Title VI does not apply to programs conducted directly by federal agencies." Halim v. Donovan, 951 F. Supp. 2d 201, 207 (D.D.C. 2013). See also, e.g., Colen v. United States, No. EDCV071359RSWLRNB, 2008 WL 2051697, at *15 (C.D. Cal. May 12, 2008), aff'd, 368 F. App'x 837 (9th Cir. 2010) (collecting cases finding no private right of action under Title VI against a federal entity).

Moreover, numerous courts have held that Title VI does not apply to individual defendants sued in their individual capacities. See Shotz v. City of Plantation, 344 F.3d 1161, 1169 (11th Cir. 2003) (noting courts "have generally concluded that individuals may not be held liable for violation of Title VI because it prohibits discrimination only by recipients of federal funding"); see also Santos v. Merritt Coll., No. C-07-5227 EMC, 2008 WL 2622792, at *2 (N.D. Cal. July 1, 2008) (dismissing Title VI claim against individual defendant; collecting cases holding individual defendants not subject to suit under Title VI).

Accordingly, Schultz's Title VI claim will be dismissed.

United States District Court
Northern District of California

**IV. CONCLUSION**

For the reasons stated above:

1. All claims against Babcock-Lumish, Rich, Yglesias, Murphy, Allen, and Higgins are hereby DISMISSED;

2. To the extent the First Claim for Relief includes a claim for damages against the Foundation, said claim is hereby DISMISSED;

3. The Third Claim for Relief against the Foundation is hereby DISMISSED.

4. The Clerk of Court shall issue summons and the United States Marshall shall serve upon the Foundation, without prepayment of fees, a copy of the SAC (Docket No. 18) and a copy of this Order.

**IT IS SO ORDERED.**

Dated: December 2, 2021

MAXINE M. CHESNEY
United States District Judge