IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDAN SCHULTZ,<br><br>Plaintiff,<br><br>v.<br><br>THE HARRY S. TRUMAN SCHOLARSHIP FOUNDATION,<br><br>Defendant. | Case No. 20-cv-04058-MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS OR TRANSFER; DISMISSING SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 34 |

Before the Court is defendant Harry S. Truman Scholarship Foundation's ("Foundation") "Motion to Dismiss Second Amended Complaint, or in the Alternative, to Transfer to the U.S. District Court for the District of Columbia," filed June 6, 2022. On June 20, 2022, plaintiff Brendan Schultz ("Schultz") filed his "Response to Defendant's Notice of Motion and Motion to Dismiss Second Amended Complaint," to which the Foundation has replied. Having read and considered the parties' respective written submissions, the Court rules as follows.[1]

## BACKGROUND

In his Second Amended Complaint ("SAC"), as limited by prior order (see Order Dismissing in Part Second Am. Compl. Pursuant to 28 U.S.C. § 1915 ("Section 1915 Order"), Dkt. No. 22), Schultz alleges the Foundation violated his rights under the Fifth Amendment and the Administrative Procedure Act, 5 U.S.C. § 701 et seq. ("APA"), by discriminating against him in the review of his application for a Harry S. Truman Scholarship ("Scholarship") and in the review of his subsequent grievance.

---

[1] By order filed July 25, 2022, the Court took the matter under submission.

In support thereof, Schultz alleges the following:

At his finalist interview for the Scholarship, the "Foundation, Brooks Allen, and Kevin Higgins[2] discriminated against [him] by treating [him] differently than non-Jewish finalists, asking [him] frivolous questions . . . that non-Jew finalists were not asked, asking [him] discriminatory questions regarding the positionality of Jews in the United States[,] asking questions to intentionally elicit an emotional response from [him], laughing at [him], and creating a hostile interview environment for [him]." (See SAC ¶ 45.) Specifically, Kevin Higgins asked him "demeaning and inappropriate" questions (see SAC 13.c), including, "Do you think that Jews are oppressed?" and "Are Jews as oppressed as racial minorities in the United States?" (see SAC ¶ 13.f), and, upon Schultz's expressing a desire to run for elected office, Brooks Allen's "smirks turned to a discernable laugh" (see SAC ¶ 13.g).

When Schultz did not receive a Scholarship, and believing he faced discrimination on the basis of his Jewish identity, he reported his concerns to the Foundation, which conducted three investigations into his grievance, each arriving at the conclusion that the decision not to award Schultz a Scholarship was based on merit and not on his Jewish identity. According to Schultz, the Foundation, in conducting those investigations, failed to "objectively receive, address, and rectify [his] complaint of discrimination based on his Jewish identity in a fair and timely manner" (see SAC ¶ 65), and, although required to do so, had failed to develop procedures "to receive and address complaints" (see SAC ¶ 60).

Based on the above allegations, Schultz seeks injunctive relief on his remaining claims.

**DISCUSSION**

By the instant motion, the Foundation seeks dismissal/transfer on the ground of

---

[2] By the Section 1915 Order, the Court dismissed the two interview panelist defendants, Brooks Allen and Kevin Higgins, from the instant action. (See Section 1915 Order.)

2

improper venue or transfer for convenience, and, in the alternative, dismissal of Schultz's claims for lack of standing and failure to state a claim.

**A. Venue**

At the outset, the Foundation moves to dismiss or transfer the instant case, pursuant to 28 U.S.C. § 1406(a) and Rule 12(b)(3) of the Federal Rules of Civil Procedure, on the asserted ground of improper venue.

"Because the defendant[] ha[s] challenged venue, the burden is on the plaintiff[] to demonstrate that venue is proper in the Northern District of California." See Saravia v. Sessions, 280 F. Supp. 3d 1168, 1188 (N.D. Cal. 2017), aff'd, 905 F.3d 1137 (9th Cir. 2018). Here, Schultz, alleging the Foundation "brought [him] to the Northern District of California to interview" and "[i]t was in conducting this interview . . . that [his] civil rights were violated" (see SAC ¶ 2), asserts venue is proper in this district.

Because Schultz has sued an agency of the United States, the propriety of venue is governed by 28 U.S.C. § 1391(e), which provides:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

See 28 U.S.C. § 1391(e). Here, venue is not proper under subsection (e)(A), as the Foundation "resides in Washington, D.C." (see Def.'s Mot. at 10:28), nor is venue proper under subsection (e)(C), as Schultz "resides in Honolulu" (see Pl.'s Resp. at 2:19). Consequently, venue will be proper in the Northern District of California only if "a substantial part of the events or omissions giving rise to the claim occurred" in this district. See § 1391(e)(B).

"To determine whether a substantial part of the events giving rise to the claim occurred in the forum, the court first considers what acts or omissions by the defendants give rise to the plaintiffs' claims," and "[a]fter identifying the alleged wrongful acts, the

3

court must determine whether a substantial part of those acts took place in the forum." See Saravia, 280 F. Supp. 3d at 1189 (internal quotation, citation, and alteration omitted); see also Emps. Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1165-66 (10th Cir. 2010) (noting "venue is not limited to the district with the *most* substantial events or omissions" and "can be appropriate in more than one district" (emphasis in original)).

Here, Schultz's Fifth Amendment and APA claims against the Foundation arise from events that occurred in San Francisco, California, and Washington, D.C., in particular, the panel's alleged discrimination against him at his finalist interview, which occurred in San Francisco, and the Foundation's acceptance of the panel's allegedly biased recommendation as well as its inadequate review of his grievance, which events, according to the Foundation and Schultz does not dispute, occurred in Washington, D.C.

The Foundation argues the "interview at which the offending questions were asked . . . does not constitute a substantial part of [Schultz's] claims," because both "[t]he ultimate decision not to select [Schultz] as a Truman Scholar" and "the investigation into [Schultz's] complaints occurred in Washington D.C." (See Def.'s Mot. at 11:22-27.) The propriety of venue, however, "does not require that a majority of the 'events or omissions' occur in [the] district," see Klingbeil v. Am. Eng'g Servs., 2007 WL 9776638, at *5 (S.D. Cal. Mar. 2, 2007), or that the district be "the best venue," see Bates v. C & S Adjusters, Inc., 980 F.2d 865, 867 (2d Cir. 1992), and as Schultz points out, "the interview in which the [alleged] discrimination took place," i.e. the pivotal event in the case, "was in San Francisco" (see Pl.'s Resp. at 2:17); see also Uffner v. La Reunion Francaise, S.A., 244 F.3d 38, 43 (1st Cir. 2001) (holding, where plaintiff brought bad faith action based on denial of coverage for sunken yacht, venue proper in Puerto Rico despite insurance contract formation and defendants' coverage decision having occurred outside Puerto Rico; finding sinking of yacht in Puerto Rico "was one part of the historical predicate for the . . . suit" and constituted "substantial" event).

Accordingly, the Court finds venue is proper in the Northern District of California.

//

**B. Transfer for Convenience**

The Foundation, in the event venue is deemed proper in this district, moves to transfer the instant case pursuant to 28 U.S.C. § 1404(a), under which "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." See 28 U.S.C. § 1404(a).

Here, the action "might have been brought" in the District of Columbia, where venue is also proper because, as set forth above, the Foundation resides in Washington, D.C., and a substantial part of the events giving rise to Schultz's claims occurred there.

The Court next considers whether a transfer to the District of Columbia is warranted "[f]or the convenience of parties and witnesses" and "in the interest of justice." See 28 U.S.C. § 1404(a).  In deciding whether transfer is appropriate, courts consider a number of factors, including: "(1) the plaintiff's choice of forum; (2) the convenience of witnesses and the parties; (3) the familiarity of the forum with the applicable law; (4) the ease of access to evidence; and (5) the relative court congestion and time of trial in each forum."  See Patten v. Hancock, 2016 WL 693233, at *1 (N.D. Cal. Feb. 22, 2016).  "The burden is on the party seeking transfer to show that when these factors are applied, the balance of convenience clearly favors transfer," and transfer will "not be allowed if the result is merely to shift the inconvenience from one party to another."  See Lax v. Toyota Motor Corp., 65 F.Supp.3d 772, 776 (N.D. Cal. 2014) (noting "[i]t is not enough for the defendant to merely show that it prefers another forum").  The Court next turns to the above-listed factors, and, as discussed below, finds the balance does not favor transfer.

First, although "[t]he general rule is that the plaintiff's choice of venue is accorded substantial weight . . . [t]he degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff's venue choice is not its residence or where the forum chosen lacks a significant connection to the activities alleged in the complaint." See Fabus Corp. v. Asiana Exp. Corp., 2001 WL 253185, at *1 (N.D. Cal. Mar. 5, 2001). Here, as noted, Schultz does not reside in the Northern District of California.

1   Consequently, this factor weighs against transfer, but only slightly.

2   Second, "[t]he convenience of witnesses is often the most important factor in
3   resolving a motion to transfer," see Patten, 2016 WL 693233, at *2, and, "[i]n balancing
4   the convenience of the witnesses, primary consideration is given to third party, as
5   opposed to employee[,] witnesses," see Royal Queentex Enterprises v. Sara Lee Corp.,
6   2000 WL 246599, at *6 (N.D. Cal. Mar. 1, 2000).  Here, the Foundation, contending "most
7   of the witnesses will be [Foundation] employees" who are "[a]ll . . . located in the
8   Washington, D.C. area," identifies two such employee witnesses, as well as one third-
9   party witness, who is located in Nevada.  (See Def.'s Mot. at 14:2-3, 6-7.)  In the SAC,
10  however, Schultz identifies three third-party witnesses, who all appear to be located in
11  the Northern District of California.  (See SAC ¶ 13, Ex. 10.)  Consequently, this factor
12  weighs against transfer.

13  Third, although, as the Foundation points out, the District Court for the District of
14  Columbia ("D.D.C.") "'sees more administrative law cases than other districts, and thus
15  may be more familiar with it,'" the Foundation concedes, "'the degree to which D.D.C. is
16  more familiar with administrative law than other federal courts is significantly less[] than
17  the degree to which a federal court is more familiar with the law of its situs than are out-
18  of-state federal courts'" (see Def.'s Mot. at 14:24-27 (quoting Ecological Rts. Found. v.
19  United States Env't Prot. Agency, 2019 WL 5295124, at *4 (N.D. Cal. Oct. 18, 2019))), a
20  circumstance that, as noted by a judge in this district, "mak[es] the degree to which this
21  factor favors transfer negligible," see Ecological Rts., 2019 WL 5295124, at *4; see also
22  Doe v. Spahn, 2021 WL 6052088, at *7 (N.D. Cal. Dec. 21, 2021) (holding "federal courts
23  are equally able to apply federal law").  Consequently, this factor is essentially "neutral."
24  See Doe, 2021 WL 6052088, at *7.

25  Fourth, "with technological advances in document storage and retrieval,
26  transporting documents generally does not create a burden."  See Patten, 2016 WL
27  693233, at *2 (alteration omitted).  Although the Foundation contends "all of the records
28  relating to the decision not to select [Schultz] and the investigation of his complaint are

located at the [Foundation's] headquarters in Washington, D.C." (see Def.'s Mot. at 14:13-15), the Foundation does not describe the form or volume of those records nor has it otherwise shown the ease of access to such evidence would differ in any material way as a result of the action remaining in this district.  Consequently, this factor weighs in favor of transfer, but only slightly.

Fifth, and lastly, although the Foundation offers evidence showing "the median time from filing to disposition of civil cases" is 9.4 months in the Northern District of California as compared with 5.8 months in the District of Columbia (see Def.'s Mot. at 15:4-6), "[r]elative court congestion is at best, a minor factor in the section 1404 calculus," see Royal Queentex, 2000 WL 246599, at *8.  Consequently, this factor weighs in favor of transfer, but only slightly.

In sum, the most important factor weighs against transfer, one additional factor weighs against transfer, albeit only slightly, two factors weigh in favor of transfer, but, again, only slightly, and one factor is neutral.

Accordingly, the Court finds the Foundation has failed to meet its burden of showing the convenience of parties and witnesses and the interest of justice warrant transfer to the District of Columbia.

**C. Standing**

As noted, the Foundation alternatively moves to dismiss the instant case, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, on the asserted ground of lack of standing.

"[T]he standing requirement springs from Article III's limitation of the judicial power to resolving Cases and Controversies, and the separation-of-powers principles underlying that limitation."  See Republic of Marshall Islands v. United States, 865 F.3d 1187, 1199 (9th Cir. 2017) (internal quotation, citation, and alteration omitted).  The "irreducible constitutional minimum" of Article III standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

7

decision." See Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (internal quotation and citation omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements," and "[w]here, as here, a case is at the pleading stage, [he] must clearly allege facts demonstrating each element." See id. (internal quotation, alteration, and citation omitted).

Schultz, arguing he "suffered an injury by being denied a Truman Scholarship" (see Pl.'s Resp. at 3:1-2), seeks relief in the form of four "permanent injunctions": (1) "order[ing] the [Foundation] to establish a documented civil rights grievance and redress procedure that provides an impartial investigation process" (see SAC ¶ 83), (2) "mandat[ing] that all future Truman Scholarship interview panelists undergo bias prevention training before serving on any Truman Scholarship regional review panel" (see SAC ¶ 84), (3) "prevent[ing] Kevin Higgins and Brooks Allen from serving on any future Truman Scholarship regional review panel or being involved in the Truman Scholarship selection process in any other manner" (see SAC ¶ 85), and (4) "enroll[ing] [Schultz] in the 2019 Truman Scholarship Program and all benefits of the program excluding the requirement to attend a 'Truman Scholar Leadership Week'" (see SAC ¶ 86). The Foundation argues Schultz fails to show his requested injunctions "actually redress[] his alleged injuries." (See Def.'s Mot. at 16:22-23.) As set forth below, the Court agrees.

To establish redressability, a plaintiff must show "a likelihood that the requested relief will redress the alleged injury." See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998); see also M.S. v. Brown, 902 F.3d 1076, 1083 (9th Cir. 2018) (noting "plaintiff must show that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" (internal quotation and citation omitted)). In determining whether a plaintiff has adequately established redressability, "courts ask whether a ruling favorable to the plaintiff would eliminate the harm to him." See Salt Inst. v. Thompson, 345 F. Supp. 2d 589, 600 (E.D. Va. 2004), aff'd, 440 F.3d 156 (4th Cir. 2006); see also Steel Co., 523 U.S. at 104 n.5 (noting "the point" is "whether a plaintiff

8

personally would benefit in a tangible way from the court's intervention" (internal quotation and citation omitted)).

With respect to the first requested injunction, the prospect that the Foundation's establishing a grievance procedure will redress Schultz's claimed injury of being denied a Scholarship, i.e., that he would be selected, is too speculative to support standing. See Linda R.S. v. Richard D., 410 U.S. 614, 618 (1973) (finding lack of standing where mother sought injunction requiring district attorney to prosecute child's father for failure to provide support; further finding prospect that threat of future prosecution would result in payment of support could, "at best, be termed only speculative").

With respect to the second and third requested injunctions, Schultz, having already completed his interview and being ineligible to interview again,[3] would not stand to benefit from injunctive relief having to do with future interview panels. See Steel Co., 523 U.S. at 108 (finding redressability requirement is not met where requested injunctive relief "cannot conceivably remedy any past wrong but is aimed at deterring petitioner from violating [statute] in the future"); see also Walsh v. Nevada Dep't of Hum. Res., 471 F.3d 1033, 1037 (9th Cir. 2006) (finding plaintiff failed to establish redressability where "she would not stand to benefit from an injunction requiring the anti-discriminatory policies she request[ed] at her former place of work").

Lastly, with respect to the fourth requested injunction, the Foundation argues "[t]he Court should . . . dismiss this request for relief because it is inconsistent with the regulations governing the [S]cholarship program and requirements applied to every other Truman Scholar." (See Def.'s Mot. at 17:10-12.) As noted, Schultz seeks "a permanent injunction to enroll [him] in the 2019 Truman Scholarship Program and all benefits of the program excluding the requirement to attend a 'Truman Scholar Leadership Week.'" (See SAC ¶ 86.) Pursuant to federal regulation, however, "a Scholar must sign an

---

[3] Pursuant to federal regulation, only undergraduate "junior-level student[s]" are "eligible to be nominated" to interview for the Scholarship, see 45 C.F.R. § 1801.3, and there is no allegation, or even a suggestion, that Schultz is still a junior.

acceptance of the [S]cholarship and acknowledgement of the conditions of the award," see 45 C.F.R. § 1801.50, which conditions include a "require[ment] to attend Truman Scholars Leadership Week" (see Decl. of Adrienne Zack in Supp. of Mot. to Dismiss or Transfer Ex. A, Dkt. 34-1).[4]

The Foundation has broad statutory authority to "prescribe such regulations as it deems necessary governing the manner in which its functions shall be carried out." See 20 U.S.C. § 2012(a)(3). Here, Schultz does not challenge the validity of the above-cited regulation. Rather, he is, in essence, requesting an exception be made for him. Schultz proffers no argument, however, as to why the Court should grant him a remedy that contravenes the Foundation's regulations, and the Court has discerned no reason to do so. See Taylor v. McCament, 875 F.3d 849, 854-55 (7th Cir. 2017) (finding redressability requirement not met where plaintiff "ask[ed] [court] to compel [federal agency] to immediately issue 80,000 U-visas" and "agency lack[ed] the statutory authority to give plaintiff the relief sought"; finding "even if [plaintiff] simply sought to compel [agency] to immediately adjudicate only *his* petition, the agency would still lack authority to provide that relief," given agency regulations stating "priority on the waiting list will be determined by the date the petition was filed" (emphasis in original) (internal quotation, citation, and alteration omitted)); see also Am. Fed'n of Tchrs. v. DeVos, 484 F. Supp. 3d 731, 745, 750 (N.D. Cal. 2020) (finding, where "nothing in the regulation entitle[d] [plaintiffs] to specific information," court "[could not] remedy the deprivation of that information").[5]

Accordingly, the Court finds Schultz fails to meet his burden of establishing

---

[4] "[A] Rule 12(b)(1) motion can . . . rely on affidavits or any other evidence properly before the court." See St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989).

[5] The SAC is silent as to whether Schultz has begun graduate study. In the event that he has, he likewise fails to proffer a reason to grant him a remedy that contravenes another regulation. See § 1801.30 (providing "[t]he Foundation . . . does not add new Truman Scholars at the graduate level"); see also § 1801.4 (defining "[g]raduate study" as "the courses of study beyond the baccalaureate level which lead to an advanced degree").

standing.[6]

The Court will, however, grant Schultz leave to amend his fourth request for injunctive relief, the sole request as to which leave to amend is not necessarily futile. See Nissan Motor Co. v. Nissan Computer Corp., 204 F.R.D. 460, 463 (C.D. Cal. 2001) (explaining "amendment is futile if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim" (internal quotation and citation omitted)).

## CONCLUSION

For the reasons stated above:

1. To the extent the Foundation moves to dismiss or transfer the above-titled action on the ground of improper venue, the motion is hereby DENIED;

2. To the extent the Foundation moves to transfer the above-titled action for convenience, the motion is hereby DENIED;

3. To the extent the Foundation moves to dismiss the above-titled action for lack of standing, the motion is hereby GRANTED, and the SAC is hereby DISMISSED with leave to amend. A Third Amended Complaint, if any, shall be filed no later than September 26, 2022.

**IT IS SO ORDERED.**

Dated: August 25, 2022

MAXINE M. CHESNEY
United States District Judge

---

[6] In light of said finding, the Court does not address herein the Foundation's argument that Schultz fails to state a claim. See Steel Co., 523 U.S. at 94 (holding "[w]ithout jurisdiction the court cannot proceed"; noting "[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause").