IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDAN SCHULTZ,<br><br>  Plaintiff,<br><br>  v.<br><br>THE HARRY S. TRUMAN SCHOLARSHIP FOUNDATION,<br><br>  Defendant. | Case No. 20-cv-04058-MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 58 |

  Before the Court is defendant Harry S. Truman Scholarship Foundation's ("Foundation") "Motion," filed January 9, 2023, "to Dismiss Fourth Amended Complaint" ("FAC"). On January 23, 2023, plaintiff Brendan Schultz ("Schultz") filed his "Response to Defendant's Notice of Motion and Motion to Dismiss Fourth Amended Complaint," to which the Foundation has replied. Having read and considered the parties' respective written submissions, the Court rules as follows.[1]

## BACKGROUND[2]

  The Foundation is a federal agency that administers the Harry S. Truman Scholarship ("Scholarship") program. (See FAC ¶ 5.) Schultz, as a third-year undergraduate student, sought and received a nomination from his college to apply for the Scholarship. (See FAC ¶ 6.) In his application, Schultz stated he is "a proud member of the Jewish . . . communit[y]," and provided examples of his "leadership" and "public service" wherein his Jewish identity played a role. (See FAC, Ex. 8, at 4, 6.) In that

---

[1] By order filed February 10, 2023, the Court took the matter under submission.

[2] The following facts are taken from the FAC.

regard, Schultz described an incident that took place on his college campus, specifically, at a meeting "to discuss a proposal to suspend a study-abroad program in Israel due to Israeli laws banning entry for boycott leaders." (See FAC, Ex. 8, at 4.) In particular, Schultz wrote that after a professor gave a "speech compar[ing] the Israeli State to Nazi Germany," Schultz "knew [his] community needed a voice for unity" and raised his hand to speak on the "moral obligation to educate students on the experiences of oppressed groups and the necessity to have a standard that be applied uniformly." (See id.)

Based on his application, Schultz "advanced to finalist status" and, on March 18, 2019, underwent a finalist interview by the San Francisco Regional Review Panel. (See FAC ¶ 6.) At the interview, Schultz alleges, one panelist asked him "demeaning and inappropriate questions," including, "Do you think that Jews are oppressed?" and "Are Jews . . . oppressed as racial minorities in the United States?" (see FAC ¶¶ 7c, 7f) and that, upon Schultz's expressing a desire to run for elected office, another panelist laughed at him (see FAC ¶¶ 7g-h). Additionally, Schultz alleges that the only other Jewish finalist was asked about "how the oppression of Jews in America compared to Black Americans," and that Schultz and said finalist were the only ones who were questioned about their ethnic or religious identity. (See FAC ¶ 8.)

When he did not receive a Scholarship from the Foundation, and believing he faced discrimination on the basis of his "ethnic identity," Schultz, on April 23, 2019, sent an email to the Deputy Executive Secretary of the Foundation "to request information pertaining to the Foundation's civil rights grievance process," to which the Deputy Executive Secretary responded that she would begin an investigation into his interview experience. (See FAC ¶ 12.) Thereafter, on May 8, 2019, Schultz sent another email "to ask for the . . . Foundation's civil rights grievance procedure that he never received," to which the Deputy Executive Secretary responded with the results of her "initial inquiry," specifically, that the panelists' recollection of his interview and materials was "generally positive," but that "[t]he threshold for being selected as a Scholar . . . is much higher than just generally positive," and further, that she lacked sufficient information to conduct an

in-depth investigation. (See FAC ¶¶ 13-14.) Ultimately, on July 12, 2019, the Deputy Executive Secretary "admitted that she had been 'negligent' in handling the investigation process," after which the "newly-appointed Executive Secretary" began a second investigation into Schultz's interview. (See FAC ¶ 15.)

On August 14, 2019, the Executive Secretary emailed Schultz her findings from the second investigation. Although she described Schultz as "well qualified" for the Scholarship and "admitted that some members of the panel posed questions with 'irreverence,'" she concluded "others presented themselves in both writing and in person as better fits for our organization and its mission." (See FAC ¶ 16.) Schultz responded with "criticisms regarding the lack of due process and impartiality of the . . . investigation," after which the Executive Secretary replied that the investigation would be turned over to the Foundation's "outside legal counsel." (See FAC ¶ 18.)

Thereafter, Schultz, "[u]nconfident regarding the sincerity of the [Foundation's] investigative process," contacted a number of federal agencies as well as his Congressional representative, none of which, according to Schultz, provided satisfactory assistance. (See FAC ¶¶ 19-20.) Subsequently, on May 1, 2020, the Foundation's outside legal counsel sent Schultz an email in which he stated his conclusion that the Foundation's "belief in, and practice of, nondiscrimination ma[de] it highly unlikely that [Schultz's] unsatisfactory interview experience resulted from personal animus by the interviewers." (See FAC ¶ 22.)

Based on the above allegations, Schultz asserts two Claims for Relief: (1) "Violation of the Due Process Clause of the Fifth Amendment," and (2) "[V]iolation of the Administrative Procedure Act, 5 U.S.C. § 701, et seq." (See FAC at 17:19, 23:7-8.)[3]

---

[3] By order filed November 10, 2022 (see Order Granting Def.'s Mot. to Dismiss Third Am. Compl., Dkt. No. 52) ("November 10, 2022, Order"), the Court granted the Foundation's motion to dismiss Schultz's Fifth Amendment and Administrative Procedure Act ("APA") claims as asserted in his Third Amended Complaint, finding Schultz had failed to plead sufficient facts to establish standing, specifically, facts demonstrating the Court could grant him the requested relief in light of eligibility requirements in the Foundation's regulations. In the FAC, Schultz now states he meets those requirements, alleging he is "not currently . . . enrolled in graduate school but intending to enroll in

By the instant motion, the Foundation seeks, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, an order dismissing both of Schultz's claims, for failure to state a claim. Additionally, the Foundation seeks, at a minimum, an order again dismissing Schultz's requests for monetary damages (see Order Dismissing in Part Second Am. Compl. Pursuant to 28 U.S.C. § 1915 ("December 2, 2021, Order"), at 5-7, Dec. 2, 2021, Dkt. No. 22 (dismissing Schultz's Fifth Amendment and APA claims to the extent he sought damages)), as well as an order striking his jury demand.

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than . . . a formulaic recitation of the elements of a cause of action." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss," however, "a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual

---

graduate school, intending and agreeing to dedicate three of the first seven years of his post-graduate school professional career to public service, intending to dedicate his career to the public sector, being a US citizen, and agreeing to comply with any other requirements of accepting and receiving a Truman Scholarship." (See FAC ¶ 24.) In light thereof, the Court finds Schultz has cured the above-referenced pleading deficiency.

1  allegations must be enough to raise a right to relief above the speculative level,"
2  Twombly, 550 U.S. at 555, and courts "are not bound to accept as true a legal conclusion
3  couched as a factual allegation," see Iqbal, 556 U.S. at 678 (internal quotation and
4  citation omitted).

**DISCUSSION**

**A.  First Claim for Relief – Fifth Amendment**

Schultz alleges the Foundation violated the Fifth Amendment by discriminating against him in the review of his application for a Scholarship and in the review of his subsequent grievance.  (See FAC ¶¶ 36, 37.)

"[A] cause of action may be implied directly under the equal protection component of the Due Process Clause of the Fifth Amendment."  See Davis v. Passman, 442 U.S. 228, 242 (1979).  "To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class."  See Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (citation omitted); see also Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir.1994) (noting "[i]ntentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status") (emphasis in original) (citation omitted).[4]  Consistent therewith, "claims based on Equal Protection violations must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent."  See Monteiro v. Tempe Union High Sch. Dist., 158 F.3d 1022, 1026 (9th Cir. 1998).

Here, Schultz alleges facts that are "at least susceptible of an inference of discriminatory intent."  See id.; see also Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266 (1977) (holding "[d]etermining whether . . . discriminatory

---

[4] Although Serrano and Maynard both concerned the Equal Protection Clause of the Fourteenth Amendment, "[e]qual protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment."  See Buckley v. Valeo, 424 U.S. 1, 93 (1976) (citation omitted).

5

purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available").[5]  In particular, Schultz alleges his "interview experience was a departure from the experience other Truman Scholarship finalists, aside from another Jewish candidate, underwent" in that it "included members of the interview panel . . . asking questions that were intended to emotionally provoke [him], using [his] racial/ethnic/religious identity to attack him, and laughing at [him]."  (See FAC ¶ 34a.)  Specifically, Schultz alleges "[n]o other finalist was asked questions related to their identity in [a] protected class, asked to defend the traumatic communal experiences of their ethnic group, told that they were 'unequivocally unqualified' for their career aspirations, or laughed at."  (See FAC ¶ 8.)  Further, Schultz alleges, "non-Jewish finalists reported being treated with respect and decency by all members of the San Francisco Regional Review Panel" (see FAC ¶ 8), including the "finalist from Hawaii" who, Schultz alleges, upon "return[ing] to the waiting room from [her] interview," told him "the interview panelists were kind and [he] had nothing to worry about" (see FAC ¶ 7a).

Given the above allegations, the FAC contains sufficient "factual content to nudge [Schultz's] claim of purposeful discrimination across the line from conceivable to plausible."  See Iqbal, 556 U.S. at 683 (internal quotations, citation, and alteration omitted).

Accordingly, the Court finds Schultz, at this stage of the proceedings, has stated a claim for violation of the Due Process Clause of the Fifth Amendment.

**B. Second Claim for Relief – APA**

Schultz alleges the Foundation, by violating Executive Order ("EO") 13160 and its own agency procedures, created circumstances that are "subject to judicial review according to the [APA]."  (See FAC ¶¶ 44-45.)

---

[5] Although Arlington Heights describes an evidentiary framework rather than a pleading standard, the Ninth Circuit has applied that framework in reviewing a district court's dismissal of an equal protection claim under Rule 12(b)(6).  See Ave. 6E Invs., LLC v. City of Yuma, Ariz., 818 F.3d 493, 504 (9th Cir. 2016).

EO 13160 prohibits "discrimination on the basis of race, sex, color, national origin, disability, [and] religion . . . in Federally conducted education and training programs and activities," see Exec. Order No. 13160, 65 Fed. Reg. 39775 (June 23, 2000), and provides that "[a]ny person who believes himself or herself to be aggrieved by a violation of [said] order or its implementing regulations, rules, policies, or guidance may . . . file a written complaint with the agency," see id. at 39777. EO 13160 further requires "each executive department or agency [to] conduct an investigation of any complaint by one of its employees[6] alleging [such] violation," and, consistent therewith, requires "each executive department and agency [to] establish a procedure to receive and address complaints." See id.

The Foundation's "Equal Employment Opportunity Statement" covers "applicants to the Truman Scholarship Program" and provides: "The Foundation does not discriminate against a candidate on the basis of race, color, national origin, religion, sex, age, genetic information, disability, marital status, pregnancy, economic status or sexual orientation." (See FAC, Ex. 12, at 1.)

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." See 5 U.S.C. § 702. Courts "may review a claim under the APA asserting that an agency violated an executive order where the order has the force of law." See Silver Dollar Graving Ass'n v. U.S. Fish & Wildlife Serv., 2009 WL 166924, at *2 (9th Cir. Jan. 13, 2009); (see also December 2, 2021, Order at 7:5-17 (finding EO 13160 has force of law)). Additionally, courts have jurisdiction under the APA "to review allegations that an agency has abused its discretion . . . by failing to

---

[6] The Attorney General's "Executive Order 13160 Guidance Document" clarifies that EO 13160, including the above-cited section, "covers all individuals involved in federally conducted education and training programs," "many [of whom] are likely to be members of the general public, rather than federal employees." See Executive Order 13160 Guidance Document: Ensuring Equal Opportunity in Federally Conducted Education and Training Programs, 66 Fed. Reg. 5398-01, 5407 (Jan. 18, 2001).

7

comply with its own regulations." See ASSE Int'l, Inc. v. Kerry, 803 F.3d 1059, 1069 (9th Cir. 2015).

Here, Schultz seeks judicial review of two asserted agency actions. First, Schultz alleges the Foundation's decision not to select him to be a Scholar violated EO 13160, as well as the Foundation's own procedures. (See FAC ¶¶ 44-46.) Second, Schultz alleges the Foundation's failure to develop "a procedure to receive and address its complaints" violated EO 13160's requirement that such a procedure be established. (See FAC ¶ 48.) The Court considers below each such challenge in turn.

### 1. Non-Selection: Discrimination

Schultz alleges the Foundation, "by . . . engaging in discrimination," violated EO 13160 and "departed from its own agency procedures." (See FAC ¶ 46.) To the extent Schultz brings a constitutional violation under the APA, namely, "discrimination based on race, ethnicity, and national origin" (see FAC ¶ 44), he has, as discussed above, pleaded sufficient facts to support such claim, see supra Section A; see also Webster v. Doe, 486 U.S. 592, 603-04 (1988) (holding, even where agency action "committed to agency discretion by law," constitutional claim based on such action "may be reviewed [under APA] by the District Court").

Accordingly, to the extent Schultz's claim under the APA is based on a constitutional violation, his claim is not subject to dismissal.

### 2. Non-Selection: Candidate's Qualifications

Schultz alleges the Foundation, "by not awarding a scholarship based on a candidate's merit," violated EO 13160 and "departed from its own agency procedures." (See FAC ¶ 46.) By the instant motion, the Foundation argues Schultz's "nonselection is not reviewable under the APA because there is no meaningful standard against which to judge the Truman Foundation's decision." (See Def.'s Mot to Dismiss Fourth Am. Compl. ("Def.'s Mot.") at 9:8-9, Dkt. No. 58.)

Although there is a "strong presumption" of reviewability under the APA, see Helgeson v. Bureau of Indian Affs., Dep't of Interior, 153 F.3d 1000, 1003 (9th Cir. 1998),

the APA expressly precludes judicial review of agency actions "committed to agency discretion by law," see 5 U.S.C. § 701(a)(2). "Agency action is committed to agency discretion in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply, thereby leaving the court with no meaningful standard against which to judge the agency's exercise of discretion." See ASSE, 803 F.3d at 1068 (internal quotation and citation omitted). "If no 'judicially manageable standard' exists by which to judge the agency's action, meaningful judicial review is impossible and the courts are without jurisdiction to review that action." See Steenholdt v. F.A.A., 314 F.3d 633, 638 (D.C. Cir. 2003) (citation omitted). To determine whether judicial review is precluded by § 701(a)(2), courts consider "the language of the statute and whether the general purposes [thereof] would be endangered by judicial review." See Perez Perez v. Wolf, 943 F.3d 853, 856 (9th Cir. 2019) (internal quotation and citation omitted); see also Pinnacle Armor, Inc. v. United States, 648 F.3d 708, 719 (9th Cir. 2011) (noting courts "may also look to regulations, established agency policies, or judicial decisions for a meaningful standard to review") (internal quotation and citation omitted).

Here, the relevant statute, 20 U.S.C. §§ 2001-2013, provides: "The Foundation is authorized to award scholarships to persons who demonstrate outstanding potential for and who plan to pursue a career in public service." See § 2005(a). The statute thus establishes two eligibility requirements the Foundation considers in selecting a Scholar, namely, the candidate must (1) "demonstrate outstanding potential for . . . a career in public service," and (2) "plan to pursue a career in public service." See id. The statute does not, however, obligate the Foundation to award Scholarships to every candidate who meets these eligibility requirements, but, rather, provides that the Foundation "is authorized" to award Scholarships to those who do. Such broad statutory language indicates the Foundation's awarding of scholarships is committed to agency discretion by law. See Helgeson, 153 F.3d at 1004 (finding, where "statute d[id] not equate loan eligibility with loan entitlement, but provide[d] that loans 'may' be issued to eligible applicants," agency's denial of loan application was committed to agency discretion by

9

law); cf. Spencer Enterprises, Inc. v. United States, 345 F.3d 683, 688 (9th Cir. 2003) (finding statute "provid[ing] that, upon determining that the petitioner is eligible, the Attorney General '*shall* . . . approve the petition'" did not leave denial of visa petition to agency discretion by law) (emphasis in original).  Indeed, the Foundation's regulations provide that "[i]n the event that a . . . panel determines that none of the Finalists from a state meets all the requirements expected of a Truman Scholar, it does not provide a recommendation," and "carr[ies] over the Scholarship for that state[,] making two Scholarships available the following year."  See 45 C.F.R. § 1801.23(c).

Moreover, the statute, while defining other terms and phrases used therein, see 20 U.S.C. § 2002, does not define "outstanding potential," further indicating Congress committed the selection of Scholars to the Foundation's discretion.  See Hyatt v. Off. of Mgmt. & Budget, 908 F.3d 1165, 1174 (9th Cir. 2018) (finding statute providing agency "shall . . . take appropriate remedial action, if necessary" committed to agency's discretion agency's decision "not to provide any remedial action in response to [petitioner]'s [p]etition"; noting "[t]here [was] no express standard in the [statute] to guide the [agency] in determining whether any particular remedy [was] either 'appropriate' or 'necessary'").  Schultz argues the Court "is perfectly well equipped to review whether a college student shows outstanding potential for a career in public service."  (See Resp. to Def.'s Notice of Mot. and Mot. to Dismiss Fourth Am. Compl. at 4:10-11, Dkt. No. 59.)  He does not, however, explain, much less identify, what law or standard the Court should use in reviewing the Foundation's determination that a candidate did or did not demonstrate outstanding potential.

Although the Foundation's regulations outline several evaluation criteria, in that they state "[p]anels evaluate Truman Finalists primarily on: (a) [l]eadership potential and communication skills; (b) [l]ikelihood of 'making a difference' in public service; and (c) [i]ntellectual strength, analytical abilities, and prospects of performing well in graduate school," see 45 C.F.R. § 1801.22 (emphasis added), such subjective factors, absent any guidance as to how they should be applied, do not constitute a "judicially manageable

10

standard," see Steenholdt, 314 F.3d at 638, allowing for meaningful judicial review.[7] Indeed, the use of the word "primarily" in the regulation essentially precludes application of a meaningful standard of review, as there is no indication therein what other factors may properly be considered.  Lastly, as the Foundation points out, not only does it "evaluate whether one individual shows outstanding potential, it evaluates whether that individual, in competition with hundreds of other applicants, should be awarded one of a highly limited number of scholarships," thus "balancing . . . one person's qualifications and perceived potential with those of another."  (See Def.'s Reply in Supp. of Mot. to Dismiss FAC at 1:20-24, Dkt. No. 61.)

In light of all of the above circumstances, the Court finds the Foundation is "far better equipped than the courts to deal with the many variables involved," see Heckler v. Chaney, 470 U.S. 821, 831–32 (1985) (holding agency's decision not to institute enforcement proceedings was unreviewable under APA; finding decision required "a complicated balancing of a number of factors which [were] peculiarly within [agency's] expertise"), and consequently, to the extent Schultz claims "greater merit" than the selected Scholars, the Court finds there is no meaningful standard by which to judge the Foundation's exercise of discretion.

Accordingly, to the extent Schultz's claim under the APA is based on his allegedly superior qualifications as a candidate, his claim is subject to dismissal.

### 3. Grievance Procedure

Schultz also alleges the Foundation "failed to adhere to [EO 13160] by not developing a procedure to receive and address its complaints and did not make any attempt to establish these procedures before addressing [his] complaints."  (See FAC

---

[7] Schultz, for example, claims "greater merit" than a finalist from California who "studied with a language program [in which] college students commonly participate," on the ground that he "received a fellowship to study Arabic at the most prestigious intensive language school in the US" (see FAC ¶ 10), a claim as to which there exists no meaningful standard to determine which experience better prepares an individual to make a difference in public service.

11

¶ 48.)  An exhibit to the FAC, however, indicates the Foundation had developed such a procedure.  Specifically, a complainant can "[e]ither send along [to the Deputy Executive Secretary] a narrative of the issues that [he/she] experienced during the [Scholar selection] process that [he/she] wish[es] for [the Deputy Executive Secretary] to address" or "[p]ermit [the Deputy Executive Secretary] to conduct [her] own investigations and share [her] findings with [the complainant]."  (See FAC, Ex. 4, at 1.)  As explained by the Deputy Executive Secretary, "[s]electing option #2 . . . allow[s] [the complainant] to remain confidential as [she] would just ask general questions regarding the process," but "may take a bit longer if [she] need[s] to re-investigate or ask questions of the other parties should [the complainant] provide information that contradicts their recollection."  (See id. at 2.)  Upon completion of the investigation, the Deputy Executive Secretary "report[s] directly to the Executive Secretary for direction."  (See id. at 1.)

In any event, even assuming, arguendo, a failure to develop a grievance procedure, the Court finds such failure was harmless.  Under the APA, "due account shall be taken of the rule of prejudicial error," see 5 U.S.C. § 706, also called the "harmless error rule," see Shinseki v. Sanders, 556 U.S. 396, 406 (2009).  Here, as noted, Schultz's complaint of discrimination was investigated at three levels within the agency.  Consequently, the Court finds he was not prejudiced by the alleged lack of a grievance or investigation procedure.

Accordingly, to the extent Schultz's claim under the APA is based on the Foundation's alleged failure to develop a grievance procedure, his claim is subject to dismissal.  See Safari Club Int'l v. Haaland, 31 F.4th 1157, 1179 (9th Cir. 2022) (holding court "will not grant relief" where "to the extent that any such errors may exist, they were harmless").

**C. Monetary Damages**

In the FAC, Schultz again seeks monetary damages.  (See FAC ¶ 61 (requesting "compensatory damages"), ¶ 62 (requesting "punitive damages"), ¶ 63 (requesting "general and special damages"), ¶ 64 (requesting "statutory damages").)  As noted in its

1  November 10, 2022, Order, the Court, by its December 2, 2021, Order, dismissed
2  Schultz's claims under both the Fifth Amendment and the APA to the extent he sought
3  damages.  (See November 10, 2022, Order at 1 n.1; December 2, 2021, Order at 5-7.)
4  Accordingly, for the reasons stated in the December 2, 2021, Order, Schultz's
5  requests for damages will again be dismissed.

### D. Jury Trial

In the FAC, Schultz demands a jury trial, which demand, the Foundation argues "should be struck because the Government has not waived sovereign immunity to permit a jury trial under the APA or an implied cause of action [as to] a Constitutional claim." (See Def.'s Mot. at 15:14-20 (citing Haynie v. Veneman, 272 F. Supp. 2d 10, 20 (D.D.C. 2003) (noting "sovereign immunity precludes demands for jury trials on claims against the federal government unless Congress has clearly waived that immunity and expressly granted a right to a jury trial")).)  The Court finds the Foundation's argument persuasive, and Schultz makes no argument to the contrary.

Accordingly, the request for a jury trial will be stricken.

## CONCLUSION

For the reasons stated above:

1. To the extent the Foundation moves to dismiss Schultz's Fifth Amendment claim, the motion is hereby DENIED.

2. To the extent Schultz's APA claim is based on a constitutional violation, the motion is hereby DENIED.

3. To the extent Schultz's APA claim is based on his qualifications as a candidate, the motion is hereby GRANTED.

4. To the extent Schultz's APA claim is based on the Foundation's alleged failure to establish a grievance procedure, the motion is hereby GRANTED.

5. To the extent the Foundation moves to dismiss Schultz's requests for monetary damages, the motion is hereby GRANTED.

6. To the extent the Foundation moves to strike Schultz's demand for a jury

trial, the motion is hereby GRANTED.

**IT IS SO ORDERED.**

Dated: March 10, 2023

MAXINE M. CHESNEY
United States District Judge