UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDAN SCHULTZ,<br><br>        Plaintiff,<br><br>    v.<br><br>THE HARRY S. TRUMAN SCHOLARSHIP FOUNDATION,<br><br>        Defendant. | Case No. 20-cv-04058-MMC   (TSH)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 93 |

Plaintiff Brendan Schultz has sued Defendant Harry S. Truman Scholarship Foundation. He alleges that he applied for the Harry S. Truman Scholarship, advanced to finalist status, and on March 19, 2019 underwent a finalist interview by the San Francisco Regional Review Panel. He alleges that he was asked demeaning and inappropriate questions, including about his Jewish identity. He did not end up receiving a scholarship, and he now sues the Foundation, alleging discrimination. His claims for discrimination under the Fifth Amendment and the Administrative Procedure Act have made it past a motion to dismiss. ECF No. 64.

We are now here on a motion to compel. Schultz moves on requests for production ("RFPs") 3-7, 9-11 and 15. RFPs 3, 4, 6 and 7 identify five other applicants by name and for each one seek the "2019 application for the Truman Scholarship including the application itself and any other documents submitted in support of the application that were reviewed during the selection process, such as but not limited to references, letters of institutional endorsement, and academic transcripts." RFP 5 seeks the same items for "any other 2019 California finalist." RFPs 9-11 request records concerning any internal civil rights investigations conducted by three identified individuals. And RFP 15 seeks "[a]ny and all other documents concerning Brendan Schultz's civil rights complaint, allegations of discrimination, or any of the civil rights investigations the Harry S.

Truman Scholarship Foundation conducted."

In his motion, Schultz agrees that for RFPs 3-7, the Foundation can omit academic transcripts and redact grade point averages. For RFPs 9-11 and 15, the Foundation represents that, despite its stated objections, it is not withholding any responsive documents. So, the dispute before the Court is about RFPs 3-7, aside from academic transcripts and GPAs.

Schultz argues that without the applications submitted by his competitors, there is no meaningful way he can prove his claim of discrimination. He explains that in the absence of this evidence, he would be unable to show that he was as qualified or more qualified than the other applicants. While the applications themselves would not contain any direct evidence of discriminatory intent, which could only come from the Defendant, Schultz observes that discrimination often has to be proven indirectly, and an important part of that is showing how the Plaintiff stacked up against the other applicants. It is clear from the Fourth Amended Complaint ("FAC") that Schultz thinks precisely this type of comparison supports his claims. FAC ¶ 10 ("When comparing the qualifications that the plaintiff holds to the qualifications the two selected students hold, quite a contrast emerges.")

The Foundation argues that two of these RFPs (6 and 7) are directed at applicants who were not interviewed by the San Francisco Regional Review Panel, and at the hearing Schultz agreed that was factually the case. The Court finds those applications to be irrelevant, or at least not proportional to the needs of the case. Schultz's allegations focus on his treatment by the San Francisco panel. FAC ¶ 8 ("The plaintiff's interview experience was significantly different than all non-Jewish finalists interviewed by the San Francisco Regional Review Panel."). It's true that paragraph 12 of the FAC alleges that two non-Jewish applicants with qualifications similar to Schultz's won scholarships in Connecticut and Michigan, and at the hearing it was clarified that those are the applicants at issue in RFPs 6 and 7. At the hearing Schultz emphasized his similarity in qualifications to these two individuals, but both sides agreed they were considered by different regional panels. Schultz also made clear he thinks the regional panels are indeed the true decisionmakers and the national organization just rubber stamps the regional recommendations. Thus, Schultz's similarity to applicants considered by other regional panels is not sufficient to

United States District Court
Northern District of California

make them relevant.

The Foundation's remaining arguments do not have merit. Schultz is right that denying him this evidence in discovery would kneecap his ability to prove his case. The Foundation argues that the requested information can be obtained through other forms of discovery, such as depositions or interrogatories, that might be less invasive of privacy. But that argument misses the mark. Schultz is not searching for the objective truth about how qualified his competitors were. He wants to know *what the Foundation knew* about each applicant when it chose between them, and that will be demonstrated by the applications.[1]

The Foundation is right that the applications will reveal personal information, but the way to handle privacy concerns is to enter a protective order. The Court therefore **ORDERS** the parties to meet and confer and within three weeks either file a stipulation and proposed protective order, or file a joint discovery letter brief not to exceed five pages together with competing proposed protective orders.

The Court accordingly **GRANTS** Schultz's motion to compel **IN PART** as follows: the Court **ORDERS** the Foundation to produce documents responsive to RFPs 3-5 (except for academic transcripts, and with GPAs redacted) for any 2019 finalist that was interviewed by the San Francisco Regional Review Panel.

**IT IS SO ORDERED.**

Dated: November 21, 2023

THOMAS S. HIXSON
United States Magistrate Judge

---

[1] The Foundation argues the applications are protected by the Privacy Act and the Family Educational Rights and Privacy Act, but can be disclosed if the Court so orders (and if the Foundation provides notice under FERPA).

3