Case No.: 3:20-cv-04058-MMC
PLTF Exhibit No.: 12
Date Admitted: _____
Signature: _____

THE HARRY S. TRUMAN SCHOLARSHIP FOUNDATION

712 JACKSON PLACE, N.W. WASHINGTON, D.C. 20006
202-395-4831   FAX: 202-395-6995
E-MAIL: OFFICE@TRUMAN.GOV
WWW.TRUMAN.GOV

To:     Dr. Terry Babcock-Lumish
        Executive Secretary
From:   C. Westbrook Murphy
        General Counsel
Date:   May 1, 2020
Re:     Scholarship Applicant Brendan Schultz

As requested, I have reviewed the correspondence relating to Brendan Schultz' assertion that he was not selected for a 2019 Truman Scholarship because of his religion and his sexual orientation.  As set forth below:

- No federal statute applies to his alleged discrimination, and
- Perhaps more importantly, his non-selection was not the result of the alleged discrimination, but rather because of the weakness of his qualifications.

## I.      Statement of Facts

### A.  Schultz Application Was So Weak That He Initially Was Denied An Interview

In early February, 2019, Pitzer College nominated California resident Brendan Schultz for a Harry S Truman Scholarship.  His accompanying application mentioned a number of activities and accomplishments, including "Bridging Backgrounds, an inter-ethnic program for Macedonian youth, which . . . [he] led on a grant from Davis Projects for Peace."  He wrote about his experience as an "American Jew" in Macedonia and proclaimed himself to be "a proud member of the Jewish and LGBTQ communities."

Schultz' application was read along with 839 others by members of a national panel who recommended 199 applicants to be advanced to the next stage of the selection process: a personal interview by one of the Foundation's regional panels.  On the basis of his application, Schultz was deemed not worthy of an interview.

Pitzer college appealed Schultz' non-selection. The Foundation's then Executive Secretary Dr. Andrew Rich decided to give Schultz a proverbial second bite at the apple, and added him to the scholarship candidates who would be interviewed in California.

On March 18, 2019 a 7-member regional panel appointed by the Scholarship Foundation interviewed 13 applicants from two western states, including 12 applicants from California.  The panel selected two applicants from California to be 2019 Harry S Truman Scholars.  Schultz was not selected.  On April 11, 2019, the Foundation publicly announced the results.[1]

---

[1] https://www.truman.gov/whats-new/2019-truman-scholars

STIP000044

**B. Shultz' Initial Complaint Lacked Specifics.**

On April 23, 2019 Schultz sent an e-mail to the Scholarship Foundation's Deputy Executive Secretary suggesting "possible antisemitic and heterosexist discrimination involved in the review of my application and during my interview." He referred to the non-discrimination polices found on the Foundation's webpage, and asked about procedures for "filing a discrimination complaint, initiating an inquiry, and beginning a mediation process."

Schultz received a response two days later in which Deputy Executive Secretary Tara Yglesias:

- Explained the procedures for investigating his suggestion of bias;
- Noted that those procedures differed from the ones found on the Foundation's webpage for investigating possible employment discrimination;
- Responded to ten questions Schultz had listed.

Ms. Yglesias expressly requested more information about the allegations of possible bias:

> Based on the information that you provide, I could begin to gather information at this stage. However, *if you would prefer that we respond to specific issues or actions,* it might be helpful to *provide me with more information* (emphasis added).

Schultz responded as follows:

- On April 23, 2019 he asked: "What information do you need from me at this time? I would be happy to provide you a detailed explanation of the circumstances that have led me to have these concerns if it would help"

- On May 1, 2019 he added:

> You mentioned in last week's email that it would be helpful for me to provide you with more information. In order for me to do so, can you please let me know what you would prefer that I submit? For example, would it be beneficial for me to send you a narrative account of the experiences that led to my concerns and specific questions I have?

- On May 8 he wrote "to formally request a copy of the Truman foundation's institutional civil rights grievance policy.

Ms. Yglesias replied that day as follows:

> My apologies for not responding sooner. I was out of the office unexpectedly on a personal matter.

> We do not have a written policy regarding these requests. My official position description gives me responsibility for everything related to the selection process. I report directly to the Executive Secretary. Thus, once my investigation is completed, I would report to the Executive Secretary for direction. We have proceeded this way for any selection process issue, no matter how trivial or serious.

STIP000045

To move forward with your inquiry, you have two choices:

1. *Either send along a narrative of the issues that you experienced during the process that you wish for me to address* (emphasis added)*; or,*
2. Permit me to conduct my own investigations and share my findings with you.

Selecting option #2 would allow you to remain confidential as I would just ask general questions regarding the process.  But realize that #2 may take a bit longer if I need to re-investigate or ask questions of the other parties should you provide information that contradicts their recollection.

On May 9 Schultz selected option 2, saying: "If my complaint can be resolved without my identity being exposed, that would be ideal."

As Schultz requested, Ms. Yglesias made inquiries, and on May 14 reported:

Dear Mr. Schultz:

I have contacted a few members of the interview committee as well as looked into the review of your written materials.

Unfortunately, I am running into some difficulty in eliciting much detail from the recollections of the panelists regarding your interview.  They are able to provide me with general information – all of which has been consistent with normal handling of the selection process.  Their recollection of your interview and the review of your materials was generally positive.  The threshold for being selected as a Scholar, however, is much higher than just generally positive.  If you are seeking feedback on your materials, there is a process in place for that.  You will need to consult your Faculty Representative and have him contact me directly.

If you would like to proceed further, *I will need specific details regarding your grievance* (emphasis added).

Mr. Schultz replied May 22, 2019: "I would like to proceed further."

My concerns relate to differential treatment on the basis of my ethnicity, religion, and sexual orientation - not feedback on my interview.

Can you expand on what you mean by "specific details"? Would you like me to provide a series of questions, a narrative account of what occurred, or something else?

## C. Schultz Provided An Account Of His Interview.

Two months later, on July 11, 2019 Schultz finally submitted a memo (Attachment A hereto) detailing his version of the interview that he asserted to have been biased.  He

- Remembered that most of the questions put to him were "benign" or respectful, except that:
  - Panel Secretary Brooks Allen and Panel Chairman Kevin Higgins asked him repeatedly about his experiences in Macedonia,
  - Chairman Higgins asked whether he believed that Jews were oppressed,

3

- o Member Ruju Srivastava asked about the apparent inconsistency between his proposed career focusing on international relations and his stated desire to run for political office when local issues were likely to be of paramount importance:
- Expressed dismay that some members of the panel had smirked or laughed at his answers;
- Imputed to other applicants their reaction to what he told them about the interview;
- Asserted that he was as well qualified for the Truman Scholarship as two other successful 2019 applicants from states other than California who were interviewed by a different regional panel and whom he apparently had never met;
- Suggested with no factual support that "given the stark differences in socio-economic class between myself and those selected, the selection appears to may involve [sic] nepotism;" and
- Asked "the Truman Foundation to investigate these circumstances and, if it is found that considerations outside of my merits were taken into account in the selection process, the Truman Foundation work to ameliorate the harm that has been caused."

In a separate e-mail accompanying his compliant, Schultz asserted additional discrimination because he was male:

> By my count, women received 62.9% of the 2019 Truman Foundation awards - a female applicant is 70% more likely to receive a Truman scholarship than a male. This raises a clear Title IX issue.

> As a Jew, member of the LGBTQ community, and masculine-identifying individual, I was discounted at every stage of the Truman selection process because of the identities I hold, not the merit I possess.

### D. The Scholarship Foundation Responded, Explaining Why Schultz' Version Of The Interview Failed To Support His Allegation of Discrimination.

By an exchange of e-mails with Ms. Yglesias, Shultz accepted the suggestion that his complaint be reviewed by Dr. Terry Babcock-Lumish, who in August would become the Scholarship Foundation's new Executive Secretary,[2] and who was not involved in the 2019 selection process.

Dr. Babcock-Lumish on August 14, 2019, responded at length to Schultz' concerns (Attachment B hereto). She explained in part that:

> In many ways, your Truman interview was entirely typical of Truman interviews. . . . [P]anelists ask a variety of questions, often challenging, if not confrontational, to ascertain how the candidates rank relative to one another for leadership potential, intellectual strength, and the likelihood of making a difference in public service. . . . From my own experience, as both a Truman Scholar and a panelist, what separates a good candidate from a Truman Scholar is the ability to deal with antagonistic questions. The rationale for this approach is that a life of public service can often be brutal – emotionally, physically, and financially – and the best Truman Scholars are individuals best able to manage adversity.

---

[2] As Executive Secretary Dr. Babcock-Lumish is the Scholarship Foundation's Chief Executive Officer. 20 U.S.C. 2011(a)

4

STIP000047

* * * * *

. . . [T]he first question that you were given - why work in Macedonia over the United States? - is one that has been asked in some form at many Truman panels over many years.  The question is never posed because we believe one is "better" than the other; rather, the question is asked because we must fully understand why an applicant is passionate about a given issue, community, geography, etc.  You were given three opportunities to respond to the question in a detailed way.

If I were present at your interview, I am not sure I would have been satisfied by your initial response to this question.  Simply having more opportunities in one country sells short your passion for both the region and the issue of humanitarian response and development.  Mr. Allen provided you the opportunity to expand on your commitment to Macedonia and thus keep yourself competitive.  I am not sure I would have given you the same grace.

As for Mr. Higgins' question, I suspect he was actively seeking a level of detail missing from your application.  Much of your material hinges on your experience in Macedonia. . . .  I do not agree with the way the question was posed or with the irreverence, but I see no evidence of discrimination.

You reference your faith in the application several times and indicate that it plays a role in both your personal philosophy of service, as well as your specific interest in Macedonia.  Consequently, I am unsurprised you were asked about this interplay.  The questions, while inelegant, were not intended as a litmus test of your faith, but rather, as an opportunity for you to communicate what animates you.

Regarding other questions Schultz raised, Dr. Babcock-Lumish discerned "no prima facia case for discrimination."  Schultz did not support his suggestion of nepotism with particularized assertion or evidence that applicants who were selected were "known to or related to anyone associated with the selection process."  Also, the greater number of women selected in the Truman Scholar class of 2019 appeared to be a natural result of "a much higher proportion of women applying and being nominated for our Scholarship."

Dr. Babcock-Lumish concluded that:

Ultimately, the decision to select other candidates was made based on the committee's determination that they presented the best overall combination of written material and interview performance.  Upon review of your materials, I can discern weaknesses. . . that were not present in other applications.  Recollections of your interview shared with Ms. Yglesias revealed that while it was generally positive, the panel felt that you were lacking in detail in some of your responses, in addition to motivations for your work.

## E.  Schultz Continued To Protest

Schultz on September 3, 2019 responded by rearguing his position and casting aspersions on the Foundation's responses to his complaints.  Dr. Babcock-Limush responded that he had raised no new arguments, but, nonetheless, she would ask the Foundation's legal counsel to review it.  Her September 6, 2019 e-mail stated in part:

STIP000048

. . . [Y]our email does not provide additional information to bolster your claim of discrimination. The process that we outlined previously requires that we now pass this investigation to our outside legal counsel. You need not do anything further, we will forward all the materials we have to him. His review will take some time.

On December 11, 2020, the Scholarship Foundation received an inquiry from Representative Judy Chu's office, forwarding for comment a statement Shultz had provided about his complaint. Dr. Babcock-Lumish responded two days later, explaining that she had:

- Arrived at the Foundation during the summer of 2019 after the selection process about which Schultz was complaining;
- Undertaken her own investigation of Shultz's complaint;
- Found no evidence of discrimination; and
- Responded to Schultz in detail—a fact he had omitted from his statement to Rep. Chu.

Dr. Babcock-Lumish concluded by assuring Rep. Chu's office that "my colleagues and I do not take concerns about discrimination lightly. As a Jewish American whose family came to this country as a direct result of pogroms in Eastern Europe, a claim of anti-Semitism is particularly concerning."

### F.  Shultz Threatened To Sue.

After some further back and forth via e-mail, Shultz on April 2, 2020 sent the Foundation a document he titled "Intent to Sue."  It stated in part:

If we are unable to come to a bilateral solution, I will be filing a lawsuit in the United States District Court for the Northern District of California under the following violations of federal civil law:

- United States Code Section 42 Part 2000d – Federal law protects the right of ethnic groups, as defined by national origin, to not be discriminated in programs that receive funding from the federal government.

- United States Code Section 20 Part 1681 – Federal law prohibits any education program or activity receiving Federal financial assistance from excluding individuals and denying benefits on the bases of sex.

- Breach of Contract – Your organization's website states that "The Foundation does not discriminate against a candidate on the basis of race, color, national origin, religion, sex, age, genetic information, disability, marital status, pregnancy, economic status or sexual orientation."

- Federal Tort Claims Act – The actions of the Harry S. Truman Scholarship Foundation have resulted in emotional distress, career setbacks, and financial losses. The Federal Tort Claims Act allows me to seek these damages through federal court six months after filing a complaint with your organization – and it has been eleven months since I filed an initial complaint.

STIP000049

Schultz's alleged tort claims would be accompanied by a demand for "Compulsory Damages for Emotional Distress" and for "Punitive Damages."  He then explained the damages he would seek, as follows:

> Federal law allows for compulsory and other damages to be multiplied by a single-digit ratio in cases where there is exceptional negligence or a demonstrated intent to cause harm. Since your organization's actions have been deplorably intentional, I will be seeking a punitive damage multiplier of at least five for total punitive damages of at least $600,000.

## II.        Shultz Has No Right Of Action Against The Scholarship Foundation.

My review begins by noting the non-applicability of statutory bases for Schulz' assertions of discrimination:

- Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d et seq., prohibits discrimination on the basis of race, color, or national origin in any program or activity that receives Federal funds or other Federal financial assistance.  The statute is inapplicable because:

  - It applies only to entities that receive funds from the Federal government, not the Federal agencies that distribute those funds.
  - It does not protect against discrimination based on religion or sexual orientation.
  - With exceptions not here relevant, a Truman Scholar must be a U.S. citizens. 45 C.F.R. 1801.3 (d).  Shultz has been a U.S. citizen since he was born in Hawaii to American parents. He never has claimed any national origin other than "American."  Thus, any assertion of discrimination based on Schultz' national origin is frivolous.

- Title VII of the Civil Rights Act, 42 U.S.C. 2000e, prohibits a Federal agency from discriminating in employment on the basis of race, color, religion, sex, or national origin. Shultz is not protected by this statute because he is neither a Federal employee nor an applicant for Federal employment

- Title IX of the Educational Amendments Act, 20 U.S.C 1681, prohibits educational institutions receiving Federal funds from discriminating on the basis of sex.

  - Even if "sex' includes sexual preference (a much-disputed question), Title IX applies only to discrimination by the recipient of the funds and not by the Federal agency providing the funds.
  - One isolated statistic about the number of females in the Truman Scholar Class of 2019 proves nothing about the intentional discrimination that Shultz alleges occurred during his interview.
  - Any suggestion that the interview panel discriminated against Schultz because he was male is rebutted by the panels make-up: 4 of its 7 seven members were male, including both Chairman Higgins and Secretary Allen—about whom Schultz specifically complains.

STIP000050

- The statement on the Foundation's website that it does not discriminate does not create a contract with applicants such as Schultz.  If a federal official's statement or website created a contract, then (i) everyone who liked his or her doctor could have kept that doctor after the Affordable Care Act became effective, and (ii) everyone who wished now would be tested for COVID-19.[3]

- Shultz has no claim that is recognizable under the Federal Tort Claims Act ("FTCA"). That Act permits claims against the United States for certain negligent acts by its "employees."  Assuming, *arguendo*, that the volunteers who served on Schultz' interview panel were Scholarship Foundation "employees" within the meaning of FTCA, Schultz alleged claim is barred for at least two reasons:

    - The panel members were performing a discretionary function;[4] and
    - Assuming, *arguendo,* that they intentionally discriminated against Schutz, FTCA does not authorize claims for intentional torts.[5]

    His damage claims also are specious:

    - There is no legal concept of "compulsory damages."
    - FTCA specifically prohibits punitive damages.[6]

### III.    The Truman Scholarship Foundation Lived Up To Its Non-Discrimination Policy.

The Scholarship Foundation has no regulation protecting applicants from discrimination based on sex or religion.  But the Foundation's website discusses at length the protections provided to employees, and then states:

> The Foundation also extends these protections to applicants to the Truman Scholarship Program.  The Foundation does not discriminate against a candidate on the basis of race, color, national origin, religion, sex, age, genetic information, disability, marital status, pregnancy, economic status or sexual orientation.

The Scholarship Foundation lives up to this aspirational goal, both generally and with regard to Schultz. It did not discriminate against Shultz because (in the words of his application) he is an "American Jew" who is "a proud member of the Jewish and LGBTQ communities"—or for any other reason other than his comparative merit.

---

[3] *Cf, Federal Crop Insurance v Merrill,* 332 U.S. 380 (1947).

[4] FTCA exempts claims "based on the exercise or performance [of] a discretionary function or duty on the part of a federal agency or an employee of the Government. . . ." 28 U.S.C. 2680(a). *See, e.g., Tsolmon v. United States,* 841 F.3d 378, 380 (5th Cir. 2016).

[5] David W. Fuller, Intentional Totts and Other Exceptions to the Federal Tort Claims Act, 8 U. ST THOMAS L.J. 375, 377 (2011).

[6] "The United States. . .shall not be liable. . . for punitive damages." 28 U.S.C. 2678.

STIP000051

### A. The Truman Scholarship Foundation Does Not Discriminate.

Discrimination of the sort alleged by Schutz is anathema to an organization memorializing the presidency of Harry S Truman.

- o Truman—over the objections of Secretary of State George Marshall—caused the United states to be the first country on May 14, 1948 to recognize the newly proclaimed nation of Israel.

- o Truman did more to advance American's civil rights than any President since Abraham Lincoln.  In speaking in 1947 to the National Association for the Advancement of Colored People—the first U.S. President to do so—he declared that the nation had reached a turning point in its efforts to guarantee freedom and equality to all Americans.  "And when I say all Americans, I mean all Americans."  The next year he urged Congress to enact legislation protecting the civil rights of all Americans.

So, it is no exaggeration to assert that non-discrimination is part of the Truman Scholarship Foundation's DNA—as borne out by the great diversity of those who have been awarded a Truman Scholarship.  In particular, Truman scholars often include members of the Jewish and LGBTQ+ communities with which Schultz self-identifies.  For example:

- The publicly available biographies of Truman Scholars show that many of them are proponents of LBGTQ+ rights, including for instance:

  - o Tico Almeida (WI '98), whom the Scholarship Foundation recognized in 2016 with its Stevens Award for his outstanding legal work on behalf of LBGTQ+ rights;[7] and

  - o Jacob Tobia (NC '13), author of the 2019 book SISSY: A COMING OF GENDER STORY.

- Newly selected Truman Scholars each year assemble on a college campus in Missouri for an orientation program called Truman Scholar Leadership Week.  The final day includes a voluntary Scholar-run nondenominational worship service in which Judaism always has been represented.

### B. The Truman Scholarship Foundation Did Not Discriminate Against Schultz.

The Scholarship Foundation's belief in, and practice of, nondiscrimination makes it highly unlikely that Schultz' unsatisfactory interview experience resulted from personal animus by the interviewers.

According to Schultz' own account, his being gay was never mentioned during the interview.  He was questioned about his faith, but that was because he—like many other Truman scholar applicants—asserted that his commitment to public service was to some degree based on that faith.  As Dr. Babcock-Lumish noted in her response to Schultz:

> You reference your faith in the application several times and indicate that it plays a role in both your personal philosophy of service, as well as your specific interest in Macedonia.  Consequently, I am unsurprised you were asked about this interplay.  The questions, while

---

[7] https://www.truman.gov/whats-new/tico-almeida-wi-98-selected-2016-stevens-award-winner.

9

STIP000052

inelegant, were not intended as a litmus test of your faith, but rather, as an opportunity for you to communicate what animates you.

That Dr. Babcock-Lumish is herself an American Jew whose own family suffered because of its faith strongly suggest that she, as the Foundation's Chief Executive Officer, would not tolerate religious discrimination of the sort that Schultz asserts.

While there is no record of the interview other than Schultz' own recollections, his behavior since then supports a conclusion that he, himself is to blame:

- Shultz complains that he was repeatedly asked about his work in Macedonia.  Dr. Babcock-Lumish suggested that he failed to give a satisfactory answer, even though "given three opportunities to respond to the question in a detailed way."  He later had a similar problem when Ms. Yglesias had to ask three times in writing before Shultz provided any details to support his complaint of alleged bias.

- Schultz' wholly unsupported assertions about possible nepotism, gender bias against males, and the applicability of the Federal Tort Claims Act show a tendency to create unsustainable fabrications.

As Dr. Babcock-Lumish pointed out, the interview panel was attempting to—

. . . ascertain how the candidates rank relative to one another for leadership potential, intellectual strength, and the likelihood of making a difference in public service. . . . [W]hat separates a good candidate from a Truman Scholar is the ability to deal with antagonistic questions.

Schultz simply failed to convince the panel that he was worthy of a Truman Scholarship, and his subsequent interactions with the Scholarship Foundation confirm the panel's judgement.

STIP000053